Argued and submitted September 4, remanded to commission for vacation of record and proceedings September 17, reconsideration denied October 22, 1985

## MID-COUNTY FUTURE ALTERNATIVES COMMITTEE et al,
*Respondents on Review,*

*v.*

## PORTLAND METROPOLITAN AREA LOCAL GOVERNMENT BOUNDARY COMMISSION et al,
*Petitioners on Review.*

(1950; CA A30904; SC S31647, S31660, S31748)

706 P2d 924

Michael B. Huston, Assistant Attorney General, Salem, argued the cause for petitioner Portland Metropolitan Area Local Government Boundary Commission. With him on the briefs were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Kathryn B. Imperati, Portland, argued the cause and filed briefs for petitioner City of Portland.

Matthew R. Baines, Gresham, argued the cause for petitioner City of Gresham. With him on the briefs was Thomas Sponsler, Gresham.

George E. Birnie, Portland, argued the cause and filed briefs for respondents on review.

Robert C. Shoemaker and Rick T. Haselton, Lindsay, Hart, Neil & Weigler, Portland, filed a brief *amici curiae* for Owners of Property Annexed to the City of Portland.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

LENT, J.

## LENT, J.

The issue is whether petitions filed by the City of Fairview with the Portland Metropolitan Area Local Government Boundary Commission (Commission) were legally sufficient, as provided by ORS 222.210 to 222.310, to permit action by the Commission on the proposed major boundary change[1] that was the subject of the petitions. The answer depends on whether participation of at least two cities is required for initiation of consolidation proceedings under ORS 222.210 to 222.310. We hold that at least two cities are necessary and, therefore, that the petitions in this instance were not legally sufficient.

On August 18, 1983, the City of Fairview (Fairview) filed with the Commission petitions signed by ten percent of the registered voters of Fairview and petitions signed by ten percent of the registered voters of an unincorporated area of Multnomah County. The petitions proposed consolidation of Fairview with the unincorporated area, which lies between the cities of Portland (Portland), Gresham (Gresham) and Fairview. The sponsors of the petitions were a citizen committee called Mid-County Future Alternatives Committee (MCFAC) and the other named petitioners on review in this court.

The Commission conducted public hearings on the proposal. Portland and Gresham participated and presented evidence and argument against the proposal. On November 28, 1983, the Commission voted to disapprove the proposal. On December 8, 1983, the chairman of the Commission signed an order disapproving the proposal and terminating the proceedings.

ORS 199.476(3) provides:

"If the decision of the commission on the petition is not filed with the filing agency within the 120 days, the petition shall be considered approved by the commission."[2]

December 16, 1983, was the 120th day. It was not until December 20, 1983, that the Commission filed with the filing agency a copy of the Commission's decision, and even then the

---

[1] A major boundary change "means formation, merger, consolidation or dissolution of a city or district." ORS 199.415(12).

[2] Fairview was the filing agency under ORS 199.415(11).

copy was not certified as required by ORS 199.476(2) and 199.480.

MCFAC and the other petitioners on review in this court, but not Fairview, sought judicial review by the Court of Appeals under ORS 199.461(4) and 183.482. The relief they sought in the Court of Appeals was "vacation of the Final Order which disapproved and terminated the consolidation." The petitioners for judicial review named the Commission as respondent. Portland and Gresham moved to intervene, and the Court of Appeals allowed the motions.

The original briefs of the Commission and the intervenors in the Court of Appeals joined issue with the legal arguments made by the petitioners in that court but did not address the issue stated at the outset of this opinion. By a memorandum of supplemental authorities submitted under ORAP 7.50(1) before oral argument in the Court of Appeals, Portland argued for the first time that the consolidation proposal "was not a valid major boundary change proposal over which the Boundary Commission had jurisdiction" because ORS 222.210 to 222.310 requires that at least two cities join in proposing consolidation. The Court of Appeals rejected this argument in a discussion appearing in footnote 4 of that court's opinion. *Mid-County Future Alt. v. Port. Metro. Area LGBC,* 72 Or App 235, 240, 695 P2d 937, 940 (1985).

The Court of Appeals held that by reason of ORS 199.476(3) "the commission was conclusively deemed to have approved the petition before it filed its order with the city [Fairview] and that the later filed order is a nullity." 72 Or App at 240, 695 P2d at 940. The Court of Appeals' decision was "Order vacated."[3]

We allowed the petitions for review of the Commission, Portland and Gresham, each of which urged that the Court of Appeals had erred with respect to the issue of the validity of the boundary change proposal made by only one city and an unincorporated area. That is the issue to which

---

[3] Because the Court of Appeals disposed of the case on the basis of ORS 199.476(3), that court did not reach several other claims by the petitioners for judicial review that the order of the Commission should be vacated. Those petitioners did not seek review in this court under ORS 2.520.

Portland's memorandum of supplemental authorities and the Court of Appeals' footnote 4 were addressed.

ORS 199.476(1) provides:

"When a major boundary change is initiated by a *legally sufficient petition* as provided by the principal Act [in this case, ORS 222.210 to 222.310], if the territory subject to the petition is within the jurisdiction of a boundary commission, the filing agency notwithstanding the principal Act, shall file * * * a certified copy of the petition with the boundary commission having jurisdiction of the change. * * *" (Emphasis added.)

The genesis of ORS 222.210 to 222.310 is found in Oregon Laws 1941, chapter 459, which was an act entitled:

"Providing for the creation of incorporated cities or towns from adjoining or nonadjoining incorporated cities or towns, or from adjoining or nonadjoining incorporated cities or towns and adjoining or nonadjoining unincorporated territory * * *."

Section 1, which eventually became ORS 222.210 provided:

"Incorporated cities or towns may be created from adjoining or nonadjoining incorporated cities or towns, or from two or more adjoining or nonadjoining incorporated cities or towns and adjoining or nonadjoining unincorporated territory after proceedings had as required by this act. * * *"

The text of the rest of chapter 459 consistently referred in the plural to such cities and towns as might seek incorporation as a new city or town.

Prior to 1971 legislative amendment, ORS 222.270 required that for a consolidation measure to succeed it had to obtain a favorable vote in each of the incorporated cities and in the unincorporated territory included in the measure. The effect of this requirement was that any one city or the unincorporated territory could defeat the entire proposal for consolidation if the measure failed in that city or territory.

With but a minor exception not pertinent here, the law was not amended until 1971. In 1971 Senate Bill 519 was introduced to revise "the procedure for consolidation of cities, with or without unincorporated areas." The title of the act proposed by Senate Bill 519 was:

"Relating to consolidation of cities and of cities and unincorporated territory; creating new provisions; and amending ORS 222.210, 222.220, 222,230, 222.240, 222.250, 222.260, 222.270, 222,280 and 222.290."

Senate Bill 519 was introduced at the request of the Portland Metropolitan Study Commission.[4] Senate Bill 519 proposed amendments to every section from ORS 222.210 to 222.290. Many of the proposed amendments were of a housekeeping nature, but significant changes were proposed for ORS 222.210 and 222.270.

The purpose of the significant amendments was explained by proponents in hearings before the Senate Local Government Committee. Representative Frank Roberts was the chief witness. He explained the feature of the then existing law that allowed any one city or the unincorporated area to veto an entire proposed consolidation. He explained:

"[T]his bill provides instead that if you have the major city in the area and any one of the other voting areas votes with the majority vote to consolidate, then the consolidation takes place, and those areas that cast a majority vote against consolidation can opt out."

This explanation was given to the Senate Local Government Committee on May 20, and on May 24 Representative Roberts again appeared before the Committee and further explained:

"[T]he purpose of the bill is to make it possible for the question of city consolidation that might involve several cities and unincorporated area around it to say that those cities could vote separately on consolidation and the cities and unincorporated areas could vote separately on the question of consolidation in forming a new city in any one of these areas that voted to come into the consolidation, then the consolidation would take place. As long as the largest city wanted to consolidate, any one of the cities or any one of the areas in which the majority vote was against consolidation, then those

---

[4] The Portland Metropolitan Study Commission existed pursuant to ORS 199.130 and was created to provide a method by which the people of that area might study and seek solutions to problems relating to water supply, sewage disposal, air pollution, transportation, parking, parks and parkways, police and fire protection and planning and zoning. ORS 199.110.

Similar bills had been introduced in the 1967 and 1969 sessions of the legislature in the House of Representatives and after passage by the House had died in committee in the Senate. *See* House Bill 1192 (1967), and House Bill 1823 (1969).

areas would not be included in the new city. It's a complete process."

After the bill was passed by the Senate, it was referred in the House to the Committee on State and Federal Affairs. On June 4, Robert Simpson, representing the Portland Metropolitan Study Commission, appeared before Subcommittee A and explained the bill much as Representative Roberts had done in the Senate committee. Mr. Simpson explained that the bill "tries to permit cities to consolidate with the unincorporated areas around them — two or more cities consolidate with the unincorporated areas around them."[5]

The bill eventually passed both houses and became Oregon Laws 1971, chapter 761. ORS 222.270 was amended to provide in pertinent part:

"(1) The governing bodies of each of the cities to be included in the proposed city shall meet in joint convention at the usual place of meeting of the governing body of that one of the cities having the largest population as shown by the last federal census, on the first Monday after the election and canvass the votes cast on the question submitted. The votes cast in each of the cities shall be canvassed separately, as shall the votes cast in each unincorporated areas proposed to be included in the proposed city.

"(2) If a majority of the votes cast in the most populous city and a majority of the votes cast in another city or an unincorporated area proposed to be included in the proposed city favor creation of the city, the joint convention, by an order entered upon its minutes, shall cause the officer performing the duties of clerk of the governing body at whose place of meeting the joint convention is held to make a certified abstract of the votes upon creation of the city. The abstract shall show the whole number of electors voting at the election upon the question in each of the cities and in each unincorporated area, if any, and the number of votes cast in

---

[5] During oral argument in this court it was suggested that there was other legislative history than that quoted, *supra*, in the text of this opinion, which has been taken from the petition for review of Portland, and that the other legislative history would indicate that it was not necessary that at least two cities join in the consolidation proposal. The writer of this opinion spent most of a day locating and listening to the testimony before the legislative committees on very poor quality tapes. Witnesses other than Representative Roberts and Mr. Simpson testified, but none of them contradicted anything that those two witnesses told the committees.

each in favor of and against creation of the proposed city. The consolidated city shall consist of the largest incorporated city proposed to be included therein, each other city whose voters vote in favor of creating the consolidated city and each unincorporated area whose voters so vote. * * *"

ORS 222.210 was amended to provide in pertinent part:

"An incorporated city may be created from adjoining or nonadjoining incorporated cities, *from an incorporated city and adjoining or nonadjoining unincorporated territory,* or from both, after proceedings had as required by ORS 222.220 to 222.310. * * *" (Emphasis added.)[6]

The respondents in this court contend that the italicized text permits one city and an unincorporated area to achieve consolidation. Standing alone, that text permits such a conclusion, and the Court of Appeals so held.

The petitioners in this court draw attention to the rest of the sentence, "after proceedings had as required by ORS 222.220 to 222.310." As they point out, each of those sections addresses itself to proceedings in which more than one city is involved. They urge that the 1941 law as amended by the 1971 law discloses a comprehensive scheme for consolidation at the instance of at least two cities.

Before the 1971 amendment it was not possible for the procedure to result in consolidation of only one city and an unincorporated area. At that time ORS 222.210 made it clear that the law only applied where two or more cities were involved. If unincorporated territory were included in the proposal and the measure received a favorable majority vote in each of the areas affected, a new city would be created from at least two cities and the unincorporated territory. On the other hand, if in any area there were an unfavorable vote, no new city would be created.

Because in 1971 ORS 222.270 was amended to allow for the creation of a new city by the favorable vote of only the largest city involved and an unincorporated territory, it was necessary to reflect that in the section describing permitted consolidations. That section was ORS 222.210, and it was so amended.

---

[6] ORS 222.210 was amended in 1983 (effective January 1, 1984) to substitute ORS "222.210" for "222.220."

We hold that at least two cities must participate in initiating consolidation by petition under ORS 222.210 to 222.310. Because only one city participated in these proceedings, there was not a "legally sufficient petition as provided by the principal Act" on which the Commission could take action under ORS 199.476(1).[7]

Petitioners in this court pray that we reverse the decision of the Court of Appeals. Reversal of that court's decision that the Commission order signed December 8, 1983, be vacated would leave the parties where they were before judicial review was sought in the Court of Appeals. On the other hand, our holding does not permit a decision that the order signed December 8, 1983, was a valid order.

There was never a legally sufficient petition which the filing agent, Fairview, could present to the Commission for the exercise of its powers or duties. The matter must be remanded to the Commission for vacation of the record and proceedings taken in this matter and the return of the petition to the filing agency.[8]

It is so ordered.

---

[7] This holding makes it unnecessary to address other arguments by the Commission, Portland and Gresham concerning the inadequacy of the description of the unincorporated territory and state constitutional arguments.

Portland, Gresham and amici curiae, Owners of Property Annexed to the City of Portland, have requested that we declare certain annexations to Portland and Gresham to be valid. This is not the proper case in which to consider such validity.

[8] The petition here simply did not fall within the purview of ORS 222.210 to 222.310. By this opinion we do not mean to suggest that petitions with minor legal flaws would meet the same fate, for we are aware that substantial compliance is sufficient under ORS 222.310.